3-16-07-19 The People of the State of Illinois Appellee by Stephanie Raymond v. Michelle Paranto Appellant by Amber Lynn Hopkins-Reid  Good afternoon, Your Honors, and may it please the Court, Counsel. My name is Amber Hopkins-Reid, and I'm with the Office of the State Appellate Defender here on behalf of the Appellant, Ms. Michelle Paranto. Ms. Paranto was found guilty of three counts of aggravated DUI, but throughout her proceedings in 2016, her counsel requested that she be screened for drug court. For instance, during a pretrial proceeding, counsel requested that she be screened for drug court, but the trial court refused to have her screened for two reasons. First, the trial court found that she was not eligible for drug court because aggravated DUI was a crime of violence. And second, in the exercise of the court's discretion, it found that screening was not automatic. After multiple further requests, the trial court still refused to order a drug court screening. Ultimately, Ms. Paranto was sentenced to three concurrent terms of six years' imprisonment. There are four issues in this case. However, today I plan on discussing only the second issue as ordered by this Court. Nevertheless, if Your Honors have any questions regarding the remaining issues, please feel free to ask. So the issue here is whether the trial court misapprehended the law when it failed to order an eligibility screening for Paranto in accordance with the Drug Court Treatment Act. So looking first at the statute, in Section 166-25, the plain language of the statute prescribes an eligibility screening that must come before an eligibility determination. Looking at the structure of Section 166-25 and the procedure it outlines, Section A in the statute describes the screening which comes before Section B and C that go through eligibility. And if you look deeper into the statute, Sections D and E talk about admission and sanctions in the drug court program. Also, looking at Section 166-20, this talks about admission to the drug court program, which must come after screening and eligibility. And specifically, looking at Subsections B, 2, and 3 in that statutory section, it talks about the defendant's willingness to enter the drug court program and their willingness to enter into a guilty plea, I believe. And both of those things are things that would be determined at an eligibility screening, so it must come first. Logically, this also makes sense. It's like ordering a PSI before proceeding to sentencing. The drug court screening serves a similar purpose as the PSI. It allows the judge to see the whole defendant. It allows them to look at the criminal history, the current crime that the defendant is charged with, their education, whether they live in the county, things like that. The drug court screening allows the judge also to see the whole defendant before making an eligibility determination of whether the drug court treatment program would be a good fit. Further, the statutory language shows that the screening is mandatory. Even though the trial court has broad discretion to admit the defendant into drug court, he cannot circumvent the procedure outlined by the legislature. As such, he cannot make an eligibility determination until after the screening has been ordered and considered by himself and the drug court team. This is similar to the statutory scheme in TASC, which is outlined in my brief. But looking specifically at MEEKS, in that case, the defendant... Specifically at what? MEEKS, M-E-E-K-S. The defendant was asked to be evaluated for TASC, but was denied because the trial court believed that the defendant would not be a good fit for the program. The appellate court then found that the trial court denied... The trial court's denial before a mandatory evaluation was a premature exercise of discretion that denied the defendant his statutory right to have the court consider this TASC report. Similarly here, the statutory scheme suggests that the screening needs to be completed before eligibility is determined. And here, the trial court refused to grant the screening before finding that the defendant was not eligible. Thus, similarly, the trial court prematurely exercised this discretion because of its misinterpretation of the statute and denied Mrs. Paranto her right to have the trial court consider the drug court screening in its determination of her eligibility. Moreover, this mandatory eligibility screening was required because Paranto was statutorily eligible for drug court. Here, the state argues that she was ineligible because aggravated DUI is a crime of violence. That says it can be considered a crime of violence if it involves a firearm. Because aggravated DUI was not specifically listed in the statute as a crime of violence and this crime didn't involve a firearm, it should be seen as an exclusion and aggravated DUI should not be run into the statute. Specifically, the state argues that a case called Karen finds that aggravated DUI is a crime of violence. But this case is distinguishable on two points. First of all, it's a Fifth District case. And second of all, it deals with crime of violence in a completely different context. It deals with interpreting what a crime of violence is under the Rights of Crime Victims and Witnesses Act, not the Drug Court Treatment Act. So, the Drug Court Treatment Act deserves its own consideration. And it's also worth noting on this point that the United States Supreme Court in a case called Leocal v. Ashcroft has found that aggravated DUI without a mens rea element similar to the statutory construction of the Illinois DUI statute has been found not to be a crime of violence in the immigration removability context. So, overall, Peralta was facially eligible for drug court, but the court refused to order the mandatory screening because it mistakenly believed that aggravated DUI was a crime of violence and that screening was not automatic. So now, specifically looking to what this court has requested in the Tazewell County Drug Court Rules. So, they have been supplemented to the court as of last week. And several materials were supplemented, but I'd like to address two in particular just for your reference. The 2015-16 Drug Court Rules are included along with the 2017 Drug Court Rules. They're virtually similar, but just for your reference when you're looking at the materials, the 2017 materials have additional appended material. That's the easiest way to tell the two documents apart. So, looking at these supplemented materials, the 2015-16 Drug Court Rules closely follow the statutory mandate, even though the trial court did not. So, the 2015-16 materials provide for a referral then screening process before the drug court team and eventually the judge determines the defendant's eligibility. And it's at this screening where probation determines initial eligibility by examining things like the defendant's criminal history, background standards, whether or not the defendant lives in Tazewell County, a risk and needs assessment, and most importantly here, the defendant's current criminal status. So, this means it would not be until after the screening has started where they could determine that the current crime that the defendant is charged with makes him or her eligible for drug court. So, and then contemporaneous to this probation screening that happens, there's a substance abuse screening that happens with the treatment provider. And that's where the defendant can talk to this treatment provider about the substance abuse issues that he or she has and whether he or she is interested in participating in the program. Then, after this screening is completed, eligibility is then determined by the drug court team with a recommendation to the judge for admission into the drug court program. If the defendant is eligible and the judge approves admission, then the case would proceed on to an admission hearing, which is essentially a guilty plea hearing. This is the process that should have applied to Pronto after her initial referral, which was made multiple times by defense counsel. She should have been automatically screened for drug court and then her eligibility should have been determined by the drug court team. However, the trial court misapprehended the law and short-circuited the statutory process, which violated Pronto's right to have all of these materials considered before an eligibility determination was made. In conclusion, if there are no questions, this court should remand the case for further proceedings in accordance with section 166-25 and 166-20. Thank you. What is the impact of the statement in the local rules that says that the county doesn't have enough money to screen everybody? The screening process doesn't have to be an elaborate process. But it is quasi-medical, right? Under the statute, under 166-20, it requires a screening and assessment by an agent of the state of Illinois, which is frequently considered a probation officer. So the screening process could be as simple as a group of emails that talk about a certain defendant, or it could be when they have their weekly or monthly meetings where they talk about the entirety of their caseload and whether or not they're going to admit new individuals into the program. That could be sufficient to be the initial screening for the program. The problem here is that not even this simple step was done for this client. Pronto was denied eligibility to have any screening process done before her eligibility was determined. And in large measure, that was because of the determination that this was a crime? Crime of violence? Yes. Yeah, the judge listed two reasons, that it was a crime of violence and because he didn't think a screening and assessment was automatic. So if the trial court was wrong about it being a crime of violence, does that – is that a basis for sending it back? Well, it should be sent back regardless of whether it's a crime of violence because under the – even under the Tazewell County Drug Court rules, whether or not they're statutorily eligible is determined during the screening process. So it only helps Pronto's case that they – that it isn't a crime of violence. Are there any further questions? Okay. Thank you. Thank you. Ms. Atkins. Ms. Raymond. May it please the Court, Your Honors, Counsel. My name is Stephanie Raymond. I'll be representing the people of the State of Illinois today. Just regarding Section 166.20 and 166.25, 166.25 does not come before 166.20. Just to look at the statute 166.20 itself, it states a defendant may be admitted into drug court program only upon the agreement of the defendant and with the approval of the court. To say that 166.25 comes before 166.20 would be saying that a screening is automatically required before all the parties have even agreed. It says both defendant – that the defendant must also agree. Before the defendant agrees, the defendant must come in and agree to plead guilty, and there are several procedures. To say that a screening is automatically required would circumvent all of that and just say that any person who walks into the court is allowed to have an admission to the drug court. That's not the way the statute is written. The statute is incorporated into the Tazewell County rules. Section 166.25 comes after. So after the person is admitted, then you begin the procedure of assessment. You must first be accepted before you can be assessed. In the Tazewell County assessment and enrollment process, it outlines these same procedures, referral eligibility assessment, within their procedures almost exactly as the statute. 166.20, the first section says, if a defendant is in agreement, the judge may enter an order for the potential participant to be screened for admission to the program. Skipping down a paragraph, this is where 166.25 comes into play. A valid assessment to determine risk and levels – risk and need levels should be then ordered. At the very bottom, skipping to the fourth paragraph, the team shall discuss all aspects of the case and make a determination whether or not to accept defendant into the program with the judge making the final decision. Therefore, the trial court in this instance was exercising his discretion in not admitting her into drug court. Even if this court were to find that it was not a crime of violence, it doesn't matter because it was the trial judge's discretion. Based on what? Based on the statute. Trial judge may admit or not. What does the statute say that the determination is based on? Is it just, I like you, I don't like you? What is the basis for it? I mean, it outlines several bases such as the defendant denies his or her use to addiction of drugs. All of these things that are in the statute outlined besides the enumerated crimes. And those things would be answered in the affirmative by a request to be part of drug court, right? Yes, so if the proceedings are – if the trial judge has heard any of these – so for instance, for example, whether or not the defendant denies that they have a drug problem. If the defendant denies that they have a drug problem, that's part of the statute. So if a defendant denies they have a drug problem, it's within the trial court's discretion to then say you're not admitted into drug court. So it's the people's position that it is the trial court's discretion. Regarding her citation of the case involving task, that's not similar because they don't have the same standard. And for ordering task, the trial court must be – there must be more presented to the trial court whether or not that's proper. That's not the same standard here. So even if this court were to find that it's not a crime of violence, it doesn't matter because it's discretionary. If there are no other questions. I guess I'm having a hard time understanding that first step that you're talking about. It's the approval of the court plus the defendant has to not deny that there's a drug problem. Well, they have to agree to the process. Not every defendant who comes in wants drug court. So if someone comes in and doesn't want drug court, then it would make no sense to automatically order a screening. Okay, so in this case, she wants drug court. She wanted drug court. So she's agreeing to those other two requirements. But just because she wants drug court doesn't mean she is required to have it. Okay, why don't you let me finish my question. Okay. All right. So the one thing that's left is the court's approval. What is the basis for the court's approval? As outlined in the statute, some of the things could be the crime in which they're convicted, whether or not they deny their drug problem, what kind of crimes they were charged with, any previous drug or crime history. Those are all things that the trial court would look at in deciding. Okay. Sir. It just seems logical to me that the evaluation would have to take place first, even if it's in the second of the two statutes, or the two sections of the statute. But before... I don't know. I don't remember evaluation without the entry process. It seems to me that that one would go first before the other. The assessment is part of the entry process. So once the defendant has been accepted into or the trial court agrees to, once the parties are in agreement to sort of move forward with drug court, then the person is assessed. So that's just the way that the statute is written. Does the judgment have two decisions, then? I'm sorry? Does the judgment have two decisions? Mm-hmm. The first is whether to allow her in for the whatever evaluation, and the second one is post-evaluation. Correct. All right. If there are no further questions. All right. Thank you very much, Ms. Raymond. And this happens to be the end of the rebuttal. Thank you, Your Honors. I'll be brief. I just would like to quickly note that the state is conflating the admission process with the screening process. Admission and screening are not the same thing, and they're referred separately in the statute. And even though the eligibility, 166-25, comes before the procedure section, when you look at the breakdown of how the order of how things are done within the procedure section, 166-20, it lists the screening before the eligibility procedures before the admission and sanction procedures. So it should be treated that way. And that's here in this case, and that would be consistent with how Tazewell County's local rules have interpreted the statute. Finally, the fact that whether or not the defendant has a drug problem, as the state referenced, should be determined during the screening process, not during the admission process. Even as evidenced in the statute, it comes in. So when you look at 166-20, it talks about admission into the program, and it talks about whether or not the defendant's willing to participate in the program. But then also, this screening, as it's listed in 166-25, it is a so there's a screening and assessment in subsection A of that statute. And both are required by the court before the admission subsections are talked about within section 166-25. So this is further evidence that these screening procedures must come before both the eligibility determination and the ultimate admission into the program. If there are no questions. Thank you very much. Sounds like you wanted some. Thank you, Ms. Hopkins-Reid, and thank you both for your argument today. It really is just a matter of your advisement to me. You've read through the written draft of the order within a short time. And now I'll take a short recess.